## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| J.T.F., *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 21-1453 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 56, 57 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SANCTIONS

## I. INTRODUCTION

Plaintiffs J.T.F. and her mother, Ana Flores, bring this action against Defendant the

District of Columbia, alleging violations of their rights under the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; Title VI of the Civil Rights Act of 1964, 42

U.S.C. § 2000d; the Equal Educational Opportunities Act of 1974 ("EEOA"), 20 U.S.C. § 1701

*et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Elementary and Secondary

Education Act of 1965, 20 U.S.C. § 6301 *et seq.*  Am. Compl. ¶¶ 1–3, ECF No. 2.  Plaintiffs'

Counts 1–17 allege they were "discriminated against . . . on the basis of [their] national origin,"

and Plaintiffs' Count 18 alleges that Defendant "failed to train [IDEA] Hearing Officers

on . . . the requirements of those statutes."  *Id.* ¶¶ 111–33.  As a result, Plaintiffs ask the Court to

enjoin the District from engaging in further violations of the IDEA, Title VI, the EEOA, Section

504 of the Rehabilitation Act, and the ADA.  *Id.* at 31.  They further seek orders requiring that

Defendant provide multiple educational services to J.T.F.; that the District provide copies of

J.T.F.'s complete and cumulative records in Spanish; that Defendant fund various independent evaluations of J.T.F.; and that the District develop a new Individualized Education Program ("IEP") based on these evaluations.  Plaintiffs also seek compensatory damages and attorneys' fees. *Id.* at 31–33.

Earlier in this litigation, the Court dismissed all claims in the amended complaint except for the claims within Counts 1–18 under the EEOA and the Count 18 claim under the IDEA.  *See* Mem. Op. ("First Mem. Op."), ECF No. 27.  The parties then engaged in an extended period of discovery—during which the Court granted multiple extensions of time—at the end of which the District and Plaintiffs filed competing motions to compel discovery (the former of which was granted while the latter was denied).  *See J.T.F. v. District of Columbia*, No. 21-cv-1453, 2023 WL 5528037, at *1 (D.D.C. Aug. 28, 2023).  In the midst of all of this, Plaintiffs moved to Baltimore and withdrew from the District of Columbia Public School district.  *See* Joint Status Report ("JSR") at 2, ECF No. 55.  The District now moves to dismiss Plaintiffs' remaining claims on the ground that they are moot.  Alternatively, the District moves for dismissal as a sanction for Plaintiffs' continued failure to provide complete discovery responses which, the District argues, is compounded by Plaintiffs' noncompliance with the Court's order to compel discovery.  For the reasons detailed below, the Court will grant in part and deny in part the District's motion to dismiss, and it will grant in part and deny in part the District's motion for sanctions.

## II.  BACKGROUND

The factual and procedural background of this case is described at length in the Court's earlier opinions.  *See* First Mem. Op. at 2–9 (recounting factual allegations giving rise to Plaintiffs' claims); Mem. Op. & Order ("Second Mem. Op.") at 1–8, ECF No. 40 (same, and

describing additional procedural history); *J.T.F.*, 2023 WL 5528037, at *1–2 (detailing progression of discovery).  The Court refers the reader who seeks additional context to those opinions, and it will limit the ensuing discussion to the background necessary to resolve the instant motions.

### A.  Plaintiffs' Amended Complaint

Plaintiffs filed their amended complaint in May 2021.  At the time, J.T.F.—a native-Spanish speaker who suffers from various learning difficulties—was a middle-school student in the District of Columbia Public School system ("DCPS").  Second Mem. Op. at 1–2.  She had entered DCPS as a pre-kindergartener in 2011, and she attended Oyster-Adams Bilingual School for much of her early education.  *Id.* at 2.  During this time, the school provided J.T.F. with an IEP to account for her disability.  *Id.*  The IEP was gradually amended over time.  *Id.*  In 2020, Oyster-Adams determined it could not provide the specialized education that J.T.F.'s IEP required, and DCPS transferred her to MacFarland Middle School for the 2020–2021 academic year.  *Id.* at 2–3.  Unhappy with the transfer and a number of other issues, Plaintiffs filed an administrative complaint with DCPS alleging that DCPS had violated the IDEA by failing to provide J.T.F. with a free appropriate public education ("FAPE").  *Id.* at 3; *see id.* at 3–4 (detailing Plaintiffs' specific allegations).  A hearing officer ultimately decided that Plaintiffs were not entitled to relief on many of their claims, *id.* at 4–5, but also found that a limited subset of Plaintiffs' claims were meritorious and demonstrated that J.T.F. had been denied a FAPE, *id.* at 5.

Plaintiffs then filed suit in federal court.  *Id.*  Counts 1–17 of Plaintiffs' amended complaint allege that DCPS discriminated against Plaintiffs on the basis of their national origin in violation of numerous federal statutes including, as relevant here, the EEOA.  *Id.*  Each count

is based on distinct factual allegations arising out of Plaintiffs' experience in DCPS from 2011 to 2021, *see id.* at 5–7 (describing the factual bases for the counts).  Count 18 alleges that the District "violated its obligations under Federal education and anti-discrimination statutes" by failing to train IDEA hearing officers on "the requirements of those statutes and the rights those statutes provide for native Spanish-speaking children with disabilities and their parents."  *Id.* at 7 (quoting Am. Compl. ¶ 133).  To remedy these violations, Plaintiffs seek injunctive and declaratory relief, as well as compensatory money damages, compensatory education, and attorneys' fees.  *Id.*; *see also* Am. Compl. at 31–33.

The District filed a motion to dismiss Plaintiffs' amended complaint, which the Court granted in part and denied in part.  *See* Second Mem. Op. at 7–8.  Specifically, the Court denied the District's motion to dismiss the EEOA claims alleged in Counts 1–18, denied the District's motion to dismiss the IDEA claim stated in Count 18, and granted the District's motion to dismiss all other claims.  *Id.* at 7–8.

## B.  Discovery

The parties then proceeded to discovery.  The Court's initial scheduling order required the parties to conclude fact discovery by July 5, 2022.  *J.T.F.*, 2023 WL 5528037, at *1.  The District served Plaintiffs with interrogatories and a request for production of documents ("RPD"), and Plaintiffs agreed to provide responses by June 30, 2022.  *Id.*  That date came and went, but Plaintiffs did not respond.  *Id.*  Accordingly, at the parties' request, the Court extended the close of discovery to September 30, *id.*, and Plaintiffs committed to responding to the District's requests by August 15, *id.* at *2.  Plaintiffs missed that deadline as well because Plaintiffs' counsel encountered "significant health concerns," and so the Court ordered Plaintiffs to submit discovery responses by October 24.  *Id.*

The Plaintiffs met this deadline, but only partially.  That is, on October 21, they responded to eight of the District's twenty-nine RPDs.  *Id.* at *2, 4.  Plaintiffs neither responded nor objected to the other twenty-one.  *Id.* at *4 & n.4 (finding that Plaintiffs failed to respond or object to RPD 1–6, 8, 11, 13, and 18–29).  And the eight responses that Plaintiffs did provide were disorganized, unlabeled, and did not correspond to the categories articulated in the District's request.  *Id.* at *4.

Plaintiffs separately failed to respond to the District's interrogatories by the October 24 deadline.  *Id.* at *2.  Instead, on November 1, Plaintiffs objected to the District's interrogatories because they were not translated into Spanish.  *Id.*

### C.  Order Compelling Discovery

On February 6, 2023, the District filed a motion seeking to compel Plaintiffs to provide "full and complete responses to its discovery requests."  *Id.*  On August 28, the Court granted the District's motion.  Regarding the District's RPDs, the Court ordered Plaintiffs to "produce all the documents responsive to Defendant's twenty-nine RPDs to comply with Federal Rule of Civil Procedure 34(b)(2)(B)–(C)."  *Id.* at *4.  The Court explained that, to the extent Plaintiffs' responses "simply referred to the entirety of the administrative record or of the hearing testimony as a whole, Plaintiffs must specify the portions of the administrative record or the hearing testimony that respond to the particular requests."  *Id.*

As for the District's interrogatories, the Court overruled Plaintiffs' objection that the interrogatories be provided in Spanish.  *Id.* at *3.  The Court explained that Plaintiffs had not demonstrated that translating the interrogatories into Spanish would present an undue burden or expense, *id.*, and that Plaintiffs' "purported language barrier is not a valid objection to

interrogatories nor an adequate reason for not providing complete answers," *id.* (internal alteration and citation omitted).

All that being so, the Court ordered Plaintiffs to "fully respond to the District's discovery requests" no later than September 27, 2023.  *Id.*  The Court warned Plaintiffs that "not fully responding to the District's discovery requests will have consequences up to and potentially even including dismissal." *Id.* at *4.

### D.  Recent Developments

On October 4, 2023, the parties filed a joint status report to update the Court on two recent developments.  First, the District explained that J.T.F. and her family had moved to Baltimore and that, as of July 13, 2023, J.T.F. was no longer enrolled in DCPS.  JSR at 2; *see also* Pls.' Notice of Change of Address, ECF No. 66.  Second, the District stated that Plaintiffs had not provided any further responses to the District's interrogatories or RPDs.  JSR at 1.

Plaintiffs, in turn, represented that, on October 2, they had informed the District that they "had no documents corresponding to Defendant's [RPDs] numbered 19-26." *Id.* at 3.  They further stated that they had "re-transmitted" documents they had provided to the District in January 2023 because those documents were responsive to RPDs 8, 9, 10, 13, and 18, *id.* at 4, and that documents responsive to RPD 27 were attached to the motion for preliminary injunction that Plaintiffs had filed in July 2021,[1] *id.*  Regarding their outstanding interrogatory responses, Plaintiffs again complained that the interrogatories were in English.  *See id.* at 5.  They then stated that the "detailed factual allegations" described in their amended complaint and motion for preliminary injunction, the "citations" to "applicable law," and the "multiple exhibits" Plaintiffs

---

[1] Plaintiffs did not address RPDs 1–6, 11, or 28–29.  *See J.T.F.*, 2023 WL 5528037, at *4 n.4.

had filed should, collectively, "be deemed sufficient to effectively constitute a Response to Defendant's Interrogatories." *Id.*

Shortly thereafter, the District filed two motions.  The first motion asks the Court to dismiss what is left of the amended complaint on the ground that Plaintiffs' move to Baltimore moots their remaining requests for relief.  *See generally* Def.'s Mem. P. & A. Supp. Def.'s Mot. Dismiss ("Def.'s Mot. Dismiss"), ECF No. 56.  The second motion asks for sanctions— specifically, the sanctions of dismissal and attorneys' fees—for Plaintiffs' failure to provide full discovery and for violating the Court's order to compel the same.  *See generally* Def.'s Mem. P. & A. Supp. Def.'s Mot. Sanctions ("Def.'s Mot. Sanctions"), ECF No. 57.  Plaintiffs oppose the District's motions,[2] Pls.' Opp'n Def.'s Mot. Dismiss Pls.' Compl. ("Pls.' Opp'n Mot. Dismiss"), ECF No. 61; *see also* Pls.' Opp'n Def.'s Mot. Sanctions ("Pls.' Opp'n Mot. Sanctions"), ECF No. 61, and those motions are now ripe for review, *see* Def.'s Reply Pls.' Opp'n Mot. Dismiss ("Def.'s Reply Mot. Dismiss"), ECF No. 67; Def.'s Reply Pls.' Opp'n Mot. Sanctions ("Def.'s Reply Mot. Sanctions"), ECF No. 68.

### III.  ANALYSIS

#### A.  Motion to Dismiss

The District moves to dismiss Plaintiffs' claims on the ground that they are moot now that Plaintiffs have moved out of the DCPS system.  *See* Def.'s Mot. Dismiss at 4–8.  Plaintiffs concede that, to the extent their remaining claims seek injunctive relief, their requests for such relief are moot.  *See* Pls.' Mot. Leave to Late File ("Pls.' Mot. Leave") at 1, ECF No. 61.  They

---

[2] In keeping with a running theme, Plaintiffs did not timely respond to the District's motions, *see* Def.'s Notice at 1, ECF No. 59, but they later sought (and the Court granted) leave to file their oppositions out of time, *see* Pls.' Mot. Leave to Late File, ECF No. 61; *see also* Min. Order (May 14, 2024).

contend, however, that their EEOA claims and remaining IDEA claim still present live claims for compensatory education.[3]  *See* Pls.' Opp'n Mot. Dismiss at 2–3.

### 1.  Legal Standard

"[T]he mootness doctrine ensures that federal courts decide only 'actual, ongoing controversies.'"  *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1127 (D.C. Cir. 2024) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)); *see also Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." (citation omitted)).  Under this doctrine, "a federal court must 'refrain from deciding [the dispute] if events have so transpired that the decision will neither presently affect the parties rights nor have a more-than-speculative chance of affecting them in the future.'"  *Pub. Citizen, Inc.*, 92 F.4th at 1127 (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)); *see also Powell v. McCormack*, 395 U.S. 486, 496 (1969) (explaining that "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome").  This rule "applies independently to each form of relief sought."  *Pulphus v. Ayers*, 909 F.3d 1148, 1152 (D.C. Cir. 2018) (quoting *McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001)).

Because federal courts lack subject matter jurisdiction to decide moot issues, "[a] motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1)."  *DL v. District of Columbia*, 187 F. Supp. 3d 1, 5 (D.D.C. 2016).  "Unlike some jurisdictional questions such as standing or ripeness, the party asserting mootness bears the initial heavy

---

[3] "Under the theory of compensatory education, courts and hearing officers may award educational services to be provided prospectively to compensate for a past deficient program." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005) (cleaned up).

burden of establishing that the case is moot." *Atlas Brew Works, LLC v. Barr*, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (cleaned up).  When evaluating a motion to dismiss, a court must "treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Indian River Cnty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017) (citation omitted).  That said, a federal court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," *Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 94 (D.D.C. 2014) (citation omitted), and thus the "factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim," *Delta Air Lines, Inc. v. Exp.-Imp. Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015) (cleaned up).  Moreover, "unlike with a motion to dismiss under Rule 12(b)(6), the [c]ourt 'may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.'"  *Id.* (quoting *Jerome Stevens Pharms., Inc. v. F.D.A.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

## 2.  Plaintiffs' IDEA Claim (Count 18)

As discussed above, Count 18 of Plaintiffs' amended complaint contains the only remaining claim stating an alleged violation and claims to relief under the IDEA.  Specifically, Count 18 alleges that the District failed to train IDEA hearing officers on the requirements of certain federal anti-discrimination statutes and the rights that those statutes provide to native Spanish-speaking students with disabilities and their parents.  *See* Am. Compl. ¶ 133.  The District argues that this claim is mooted by Plaintiffs' move out of DCPS.  *See* Def.'s Mot. Dismiss at 6–8.  In doing so, the District acknowledges that "a claim for compensatory education [under the IDEA] is not rendered moot by an out-of-district move."  *See D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 497–98 (3d Cir. 2012); *Morris v. District of Columbia*, 38

F. Supp. 3d 57, 67 (D.D.C. 2014) ("Courts have specifically held that where the possibility of compensatory education is still available, a plaintiff's claim will survive a mootness challenge."); *see* Def.'s Mot. Dismiss at 6–7.  But the District contends that, here, Plaintiffs "do not seek compensatory education or tuition reimbursement in connection with" their single remaining IDEA claim, which alleges "systemic" violations of the IDEA by the District.  *See* Def.'s Mot. Dismiss at 7.  The District further contends that, even if Plaintiffs *did* seek compensatory education for the District's alleged systemic violation of the IDEA, "such relief [would not] be appropriate."  *See id.* at 7–8.  Rather, according to the District, the systemic violation of which Plaintiffs complain could only be "remedied by a comprehensive injunction designed to bring the District into compliance with [the] IDEA."  *Id.* (quoting *DL v. District of Columbia*, 860 F.3d 713, 731 (D.C. Cir. 2017)).  And because Plaintiffs' move out of the district *does* moot their claims for injunctive relief under the IDEA, *see K.B. v. District of Columbia*, No. 13-cv-649, 2015 WL 5191330, at *7 & n.6 (D.D.C. Sept. 4, 2015), the District concludes that Count 18 is moot.

Plaintiffs mount only a highly generic rebuttal to these contentions.  First, Plaintiffs argue "that a child who has moved out of [the District of Columbia] may continue seeking" relief under the IDEA for compensatory education.  *See* Pls.' Opp'n Mot. Dismiss at 1–2.  As just mentioned, while that general proposition is true, it is also not in dispute.  Second, Plaintiffs point back to their amended complaint.  They argue that their amended complaint details, "on a year-by-year basis," the District's many alleged violations of the IDEA and also states claims for "compensatory education services."  *See id.* at 2; *see also* Am. Compl. at 31–32 (detailing specific compensatory education requested).  The problem, of course, is that the Court has already dismissed almost all of Plaintiffs' IDEA claims, and the one IDEA claim that remains in

Count 18 alleges that the District systemically violated that statute by failing to properly train its hearing officers.  It is far from obvious how compensatory education would remedy Plaintiffs for that alleged, systemic violation, yet Plaintiffs make no attempt to respond to the District's argument that, as a result, Count 18 can only be understood to be seeking injunctive relief.  *See* Def.'s Mot. Dismiss at 7.  Nor do Plaintiffs feint at addressing the District's related contention that compensatory education would not be an "appropriate" remedy in light of the violation alleged.  *See id.* at 7–8.

It is well-settled that "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *E.g.*, *Davis v. Transp. Sec. Admin.*, 264 F. Supp. 3d 6, 10 (D.D.C. 2017) (emphasis omitted) (citation omitted).  And it is equally well-settled that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . . [A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold [her] peace."  *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).  Here, Plaintiffs made no effort to respond to the specific contentions that the District raised regarding Count 18 and the relief sought therein under the IDEA.  The Court is not inclined to parse through the District's legal arguments and come up with the arguments it feels would have best supported Plaintiffs' case. The Court will therefore treat the District's argument as conceded and will dismiss the IDEA claim alleged in Count 18 as moot.

3.  Plaintiffs' EEOA Claims

The District also contends that Plaintiffs' claims arising under the EEOA should be

dismissed because they are moot.  *See* Def.'s Mot. Dismiss at 5–6.  The District argues that

Plaintiffs' move to Baltimore moots their claims for injunctive relief under the EEOA, *id.* at 5—

a point which Plaintiffs do not dispute, *see* Pls.' Mot. Leave at 1.  The District further argues that

"monetary damages are not available under the EEOA," and that the EEOA only authorizes the

Court to issue "equitable remedies for violations of the statute."  *See* Def.'s Mot. Dismiss at 5.

In response, Plaintiffs again argue that their claims are not moot because they seek

compensatory education.  *See* Pls.' Opp'n Mot. Dismiss at 2–3.  In doing so, Plaintiffs focus

exclusively on distinguishing their case from *Mumid v. Abraham Lincoln High School*, 618 F.3d

789, 797 (8th Cir. 2010), the case on which the District relies for the proposition that money

damages are not available under the EEOA.  *See id.*; *see also* Def.'s Mot. Dismiss at 5.  Plaintiffs

do not, however, make an affirmative argument explaining why their claims for compensatory

education under the EEOA are not moot.

Refined to bare essence, the question of whether Plaintiffs' EEOA claims remain live

turns on whether the EEOA authorizes the Court to award compensatory education as a remedy

for a violation of that statute.  The answer to that question is far from clear.   Other courts have

explained that the EEOA grants individuals the right to seek "equitable relief."  *See Issa v. Sch.*

*Dist. of Lancaster*, 847 F.3d 121, 141 (3d Cir. 2017); *Mumid*, 618 F.3d at 798 ("The language

and structure of the EEOA indicate that the congressional purpose was to provide only equitable

remedies for a violation of the statutory rights created by the statute."); *Eltalawy v. Lubbock*

*Indep. Sch. Dist.*, 816 F. App'x 958, 964 (5th Cir. 2020) ("[T]he district court could craft an

equitable remedy if an EEOA violation is shown.").  And "compensatory education is . . . an

equitable remedy." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 523 (D.C. Cir. 2005) (quoting *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994)); *see also D.F.*, 694 F.3d at 497 ("[C]ompensatory education is an equitable remedy that compensates a special needs student for rights the district already denied [her]." (internal quotation marks omitted)).

But even though compensatory education is an equitable remedy, courts have been hesitant to conclude that it is an equitable remedy that may be granted for a violation of the EEOA.  Although some courts have suggested that the EEOA *might* allow them to award compensatory education, the parties have not cited—and the Court has not found—any case in which a court affirmatively determined whether compensatory education is available under the EEOA.  *See Eltalawy*, 816 F. App'x at 964 n.9 (explaining that no court has "decided whether the EEOA permits awards of compensatory education" (citing Kevin Golembiewski, *Compensatory Education Is Available to English Language Learners Under the EEOA*, 9 Ala. C.R. & C.L.L. Rev. 57, 62 (2018))); *Issa*, 847 F.3d at 126 n.2 (recognizing that compensatory education "might" be available under the EEOA); *Mumid v. Abraham Lincoln High Sch.*, No. 005-CV-2176, 2008 WL 2811214, at *10 n.9 (D. Minn. July 16, 2008) (theorizing that "the equitable remedies of compensatory education or tuition reimbursement *might* be available under" the EEOA (emphasis added)).  At the same time, the District has not identified—and the Court has not found—any case holding that the EEOA forecloses an award of compensatory education.  *Cf. Hanover Cnty. Unit of the NAACP v. Hanover Cnty.*, 461 F. Supp. 3d 280, 300 (E.D. Va. 2020) (stating that the EEOA "does not preclude courts from imposing forms of equitable relief other than those specifically enumerated").

In short, the current state of the law illustrates significant uncertainty as to whether the EEOA permits courts to award compensatory education. Despite this uncertainty, the parties do not meaningfully brief the issue. Although the District addresses the issue in somewhat more detail in its reply brief, *see* Def.'s Reply Mot. Dismiss at 4, the Court declines the District's invitation to dismiss Plaintiffs' remaining claims based on arguments raised for the first time in reply, *see Lindsey v. District of Columbia*, 879 F. Supp. 2d 87, 95 (D.D.C. 2012) ("[B]ecause the District raised this argument for the first time in its reply brief, it is waived."). Given the uncertain state of the law and the lack of meaningful briefing, the Court concludes that, at this stage, it would be improper to dismiss Plaintiffs' EEOA claims on mootness grounds. The District may, however, re-raise the issue at a later stage of the litigation.

### B.  Motion for Sanctions

The District alternatively asks the Court to dismiss Plaintiffs' remaining claims as a sanction for their continued failure to respond to the District's discovery requests and this Court's orders. Specifically, the District argues that "[t]he Court should dismiss this matter for Plaintiffs' willful failure to obey its August 28, 2023 discovery order and their continued noncompliance with the Federal Rules of Civil Procedure and this Court's orders, which has prejudiced the District, burdened the Court, and warrants a deterrent sanction." Def.'s Mot. Sanctions at 6.

#### 1.  Legal Standard

Federal Rule of Civil Procedure 37 provides that a district court may order sanctions, including dismissal of the action "in whole or in part," for failure "to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Additionally, sanctions are appropriate if "a

party, after being properly served with interrogatories under Rule 33 . . . , fails to serve its answers, objections, or written response."  Fed. R. Civ. P. 37(d)(1)(A)(ii).

District courts have "broad discretion to impose sanctions for discovery violations." *Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996).  "The central requirement of Rule 37 is that 'any sanction must be just,' which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation."  *Id.* at 808 (quoting *Ins. Corp. v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 707 (1982)).  Thus, dismissal is a "'sanction of last resort,' to be used only when less onerous methods . . . will be ineffective or obviously futile."  *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (quoting *Shea v. Donohoe Const. Co.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986)).

In *Webb*, the D.C. Circuit outlined three basic justifications that courts must consider in determining whether dismissal of a plaintiff's claims is warranted as a Rule 37 sanction.  *Id.* First, dismissal may be justified where "the errant party's behavior has severely hampered the other party's ability to present [its] case—in other words, that the other party 'has been so prejudiced by the misconduct that it would be unfair to require [it] to proceed further in the case.'"  *Id.* (quoting *Shea*, 795 F.2d at 1074).  Second, dismissal may be warranted where the errant party's behavior places "an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay."  *Id.* (quoting *Shea*, 795 F.2d at 1075).  And finally, dismissal may be appropriate when the court must "sanction conduct that is disrespectful to the court and to deter similar misconduct in the future."  *Id.* (quoting *Shea*, 795 F.2d at 1077).  Summarized, a sanction of claim dismissal must be justified by "(1) prejudice to the opposing party, (2) prejudice to the judicial system [or] (3) the need for

punishment and deterrence." *Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 4–5 (D.C. Cir. 2015); *see also Indep. Producers Grp. v. Copyright Royalty Bd.*, 966 F.3d 799, 811 (D.C. Cir. 2020).  Any one of these justifications, standing alone, can provide a sufficient basis for dismissing a case.  *See Webb*, 146 F.3d at 971.

2.   Analysis

In its motion for sanctions, the District argues that each of the three *Webb* factors justifies dismissing Plaintiffs' remaining claims.  *See* Def.'s Mot. Sanctions at 7–8.  Plaintiffs ostensibly oppose the motion, but their brief largely does not engage with the District's analysis of the *Webb* factors or, for that matter, any legal authority.  *See generally* Pls.' Opp'n Mot. Sanctions. Instead, their brief rehashes the long and winding road upon which discovery has proceeded in this case, and, at points, attempts to re-raise arguments that the Court has already rejected.  *See id.* at 1–2 (appearing to object to the fact that the District's interrogatories were written in English).  Nonetheless, the Court finds that, at this stage, dismissal of Plaintiffs' remaining claims is not yet warranted.

The first *Webb* factor requires the District to demonstrate that Plaintiffs' noncompliance with their discovery obligations has prejudiced it to such an extent that "it would be unfair to require [it] to proceed further in the case."  *Webb*, 146 F.3d at 971 (quoting *Shea*, 795 F.2d at 1074).  "In determining whether a party's misconduct prejudices the other party so severely as to make it unfair to require the other party to proceed with the case, courts look to whether the aggrieved party has cited specific facts demonstrating actual prejudice."  *Cumis Ins. Soc'y, Inc. v. Clark*, 318 F. Supp. 3d 199, 211 (D.D.C. 2018) (quoting *Campbell v. Nat'l R.R. Passenger Corp.*, 309 F.R.D. 21, 26 (D.D.C. 2015)).

Here, the District asserts that Plaintiffs' failure to provide complete discovery has prevented it from "being able to understand and evaluate Plaintiffs' novel claims, assess the bases and appropriateness of their sought-after remedies, or formulate its defenses and defend this case." *See* Def.'s Mot. Sanctions at 7. While these are undoubtedly "legitimate grievances, they do not demonstrate that [Plaintiffs'] behavior has prejudiced the [District's] ability to present [its] case." *See Bradshaw v. Vilsack*, 286 F.R.D. 133, 141 (D.D.C. 2012) (declining to dismiss case where defendants argued they were "unable to proceed with discovery, formulate an effective defense, move for summary judgment (if warranted), or prepare for trial"). Although Plaintiffs' delays and refusals to produce the requested discovery have prevented the District from "mov[ing] forward toward dispositive briefing or trial," that alone does not establish actual prejudice given that the same thing "will happen nearly every time that a plaintiff's violation of a court order delays proceedings during the discovery phase." *Id.*; *see also Reliable Limousine Serv.*, 776 F.3d at 5 (explaining that "delay that merely prolongs litigation is not a sufficient basis for establishing prejudice" (internal quotation marks omitted)). Moreover, the District's generic assertions of prejudice "are not the kind of specific, factually supported allegations required to find" actual prejudice. *Bradshaw*, 286 F.R.D. at 141; *see also Cumis Ins. Soc'y*, 318 F. Supp. 3d at 211. And finally, this is not a case—like the one on which the District relies, *see* Def.'s Mot. Sanctions at 7—in which Plaintiffs have *completely* failed to participate in, or respond to, discovery, *see Hyman v. Am. Inst. of Architects*, No. 18-cv-2899, 2020 WL 709363, at *2 (D.D.C. Feb. 12, 2020) (dismissing claims as sanction for plaintiff's "refusal to respond to *any* of [the defendant's] discovery requests and to the [c]ourt's subsequent [o]rder compelling discovery" (emphasis added)); *see also Perez v. Berhanu*, 583 F. Supp. 2d 87, 91 (D.D.C. 2008) ("Plaintiffs are unable to present their case for a merits resolution without *any* discovery from

defendants; no such discovery is possible in the face of defendants' failure to respond to discovery requests or orders of this Court." (emphasis added)).

As for the second *Webb* factor, Plaintiffs' discovery delays have not yet risen to the point at which they impose an "intolerable burden" on the Court. *See Webb*, 146 F.3d at 971 (citation omitted); *see also Shea*, 795 F.2d at 1075–76 (explaining that dismissal is proper "[w]here the delay or misconduct would require the court to expend considerable judicial resources in the future in addition to those it has already wasted, thereby inconveniencing many other innocent litigants in the presentation of their cases" (emphasis omitted)). The Court has unquestionably been burdened by Plaintiffs' failure to adequately respond to the District's discovery requests. And the D.C. Circuit has held that "[l]itigants who are willful in halting the discovery process . . . in this era of crowded dockets . . . deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism." *Reliable Limousine Serv.*, 776 F.3d at 5 (quoting *Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 691 (D.C. Cir. 1987)). But although the Court has expended significant resources on this matter and is frustrated by Plaintiffs' continued refusal to adequately discharge their discovery obligations, it cannot find by clear and convincing evidence that innocent litigants have been inconvenienced by Plaintiffs' recalcitrance. *See, e.g.*, *Dist. Title v. Warren*, 319 F.R.D. 25, 34 (D.D.C. 2015).

Finally, the Court does not believe that dismissal is necessary at this time to punish disrespect to the Court. *See Webb*, 146 F.3d at 971. Nor does the Court think that Plaintiffs' behavior has been so "flagrant or egregious" that it warrants dismissal to deter future litigants from engaging in similar behavior. *See id.* at 975; *see also Johnson v. BAE Sys., Inc.*, 106 F. Supp. 3d 179, 189 (D.D.C. 2015) (explaining that "[t]he third [*Webb*] rationale requires a finding of flagrant or egregious misconduct in order to justify dismissal in the absence of other factors").

For one thing, Plaintiffs took limited, albeit insufficient steps to make progress towards responding to the District's RPDs.  *See* JSR at 3 (Plaintiffs affirmatively representing that they "ha[ve] no documents corresponding to Defendant's [RPDs] numbered 19-26"); *see also Young v. Vilsack*, No. 19-cv-2144, 2023 WL 8083635, at *3 (D.D.C. Nov. 21, 2023) (finding no "flagrant or egregious misconduct" where litigant had "taken steps to supplement and remedy his discovery production").  For another thing, it is not immediately apparent whether the fault for the inadequate discovery responses lies with Plaintiffs, their counsel, or a combination of both. *See Bradshaw*, 286 F.R.D. at 142 (stating that "dismissal is appropriate as a deterrent measure only when the client is aware of the attorney's misconduct").

To be clear, Plaintiffs' responses to the District's requests for discovery remain largely insufficient.  Although Plaintiffs have responded to some of the RPDs, they have still failed to respond to others despite the Court's order compelling them to do so.  The only response they muster—arguing that a "response" to RPDs is different than an "answer" to RPDs, *see* Pls.' Opp'n Mot. Sanctions at 7—is entirely unpersuasive and grounded in no citations to legal authority of any kind.  Equally unavailing is their argument that the factual allegations contained in their complaint and motion for preliminary injunction serve as a "substitut[e]" for responding to the District's interrogatories.  *See* JSR at 5; *cf. Bbale v. Lynch*, 840 F.3d 63, 67 (1st Cir. 2016) ("A party's factual assertions in pleadings are not evidence and are not sufficient to establish material facts.").  Finally, the Court is confused by Plaintiffs' request to stay further discovery "until the Special Master has filed her Report on the ECF system and the Court has conducted a de-novo review of the Report of the Special Master."  *See* Pls.' Opp'n Mot. Sanctions at 6. Plaintiffs' request appears to be based on the mistaken premise that, at some earlier point in this litigation, "the Court appointed a Special Master" to "expedite matters and resolve conflicts

between the parties." *See id.* at 5.  But the Court has not appointed a special master in this case.[4]
*See* Def.'s Opp'n Pl.'s Mot. Leave to Late File at 6 n.3, ECF No. 62.

Plaintiffs' intransigent approach to responding to discovery and their utter refusal to
answer the District's interrogatories despite the Court's most recent order compelling them to
"fully respond" to the District's requests, *J.T.F.*, 2023 WL 5528037, at *3, demonstrates a willful
refusal to comply with their discovery obligations and this Court's orders that likely will, if it
continues, justify dismissal as a sanction, *see, e.g., Arias v. Dyncorp Aerospace Operations,
LLC*, 677 F. Supp. 2d 330, 332 (D.D.C. 2010) (explaining that "[w]hile a Rule 37(b) dismissal
usually follows some showing of willfulness, bad faith or fault, a plaintiff's persistent failure to
comply with discovery and discovery-related orders can be viewed as willful where multiple
warnings and second chances have been given to the plaintiff"); *Dinkel v. Medstar Health Inc.*,
304 F.R.D. 339, 343 (D.D.C. 2014) (same); *U.S. Bank Nat'l Ass'n v. Poblete*, No. 15-cv-312,
2017 WL 598471, at *6 (D.D.C. Feb. 14, 2017) ("Where, as here, a defendant has ignored
multiple orders by the Court, and the Court's express warning of default judgment, no lesser
sanction is warranted.").  The Court is also skeptical that Plaintiffs will adequately fulfill their
discovery obligations if given one more extension of time to do so.  *See Reliable Limousine*

---

[4] In response to this Court's order to show cause, Plaintiffs also assert that certain of their
claims involve an appeal of agency action, require review of an administrative record, and are
thus exempt from discovery pursuant to Federal Rules of Civil Procedure 26(a)(1)(B)(i) and
26(b).  *See* Pls.' Resp. Court's Order Show Cause at 3–4, ECF No. 64.  They further contend that
the District is therefore "barred from serving Interrogatories on [Plaintiffs], barred from seeking
to compel [Plaintiffs] to answer those Interrogatories, and barred from asking this Court to
sanction [Plaintiff]."  *Id.* at 4.  The District is correct that Plaintiff has waived this objection by
failing to raise it until this extremely late stage of the game.  *See* Def.'s Reply Mot. Sanctions at
4–5.  And in any event, Plaintiffs do not cite—and the Court has not found—any authority to
support the proposition that Rule 26(a)(1)(B)(i) and 26(b) bar discovery relating to Plaintiffs'
EEOA claims.  Finally, Plaintiffs' argument is disingenuous: Plaintiffs themselves served
discovery requests in connection with their claims, and also moved to compel the District to
respond to those requests.

*Serv.*, 776 F.3d at 5 (affirming default as sanction where district court had already moved the discovery deadline twice and thus had "no reason to expect that, if it granted yet another continuance, [the defendant] would meet his discovery responsibilities"); *Bonds*, 93 F.3d at 808 (explaining that dismissal is an appropriate sanction where "less dire alternatives . . . would obviously prove futile" (quoting *Shea*, 795 F.2d at 1075)); *Arias*, 677 F. Supp. 2d at 334 (ordering dismissal as sanction where "plaintiffs have demonstrated no good cause entitling them to yet another extension of time to comply with discovery obligations with which they should have complied long ago" and where "they [have not] shown that one more grant of additional time will succeed").  Nevertheless, mindful of the "strong presumption in favor of adjudications on the merits," *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013) (quoting *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995)), the Court will grant Plaintiffs one further extension of time to provide complete responses to the District's discovery requests. Plaintiffs are ordered to fully respond to the District's discovery requests within thirty days of the date of this order, and they are expressly warned—for a second time—that failure to comply may result in sanctions, up to and including dismissal of all of their remaining claims.

### 3.  Attorneys' Fees

In addition to asking the Court to dismiss the case, the District seeks an award requiring "Plaintiffs, their counsel, or both, to pay the reasonable expenses, including attorney's fees, caused by Plaintiffs' failure."  *See* Def.'s Mot. Sanctions at 9.  Where a party has failed to comply with an order, regardless of whether other sanctions have been imposed, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially

justified or other circumstances make an award of expenses unjust."[5]  Fed. R. Civ. P.
37(b)(2)(C).

In the circumstances of this case, the Court does not believe that imposing a monetary
penalty on Plaintiffs themselves would be just because it appears to be their counsel who bears
responsibility for failing to "meet the discovery obligations."  *See Davis v. D.C. Child & Fam.
Servs. Agency*, 304 F.R.D. 51, 62 (D.D.C. 2014); *see also Hildebrandt v. Vilsack*, 287 F.R.D. 88,
99 (D.D.C. 2012) (explaining that "imposing a monetary penalty on these plaintiffs for the
misdeeds of their attorney would be unjust").  Monetary sanctions against their counsel, on the
other hand, may be justified by the cost, inconvenience, and difficulty that her professional
misconduct has imposed on the District and the Court.  *See Shea*, 795 F.2d at 1075 (noting that
"the court may order the guilty counsel to pay a designated amount to the other party to cover his
costs and inconvenience" and that the costs incurred by the defendant "can be adequately
compensated by requiring [the plaintiff's] attorneys to pay those fees, or any other amount that
the District Court determines to be just compensation").  And although the Court recognizes that
counsel represents Plaintiffs *pro bono*, it has previously warned her that "further unwarranted
delays and unmeritorious objections may result in an award of fees in the future."  *J.T.F.*, 2023
WL 5528037, at *4.  For these reasons, the Court orders the District to submit within thirty days
a petition for attorneys' fees and expenses.  Such fee petition must be accompanied by
supporting documentation and affidavits.

---

[5] Although the rule uses the mandatory word "must," subsequent decisions within this
Circuit make clear that Rule 37 does "not significantly narrow the discretion of the court to
award attorney's fees for discovery violations."  *See Jones v. Dufek*, 830 F.3d 523, 529 (D.C.
Cir. 2016); *see also Wilson v. On the Rise Enterprises, LLC*, No. 16-cv-2241, 2019 WL 399821,
at *5 (D.D.C. Jan. 30, 2019).

### IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 56) is **GRANTED IN PART AND DENIED IN PART**, and Defendant's motion for sanctions (ECF No. 57) is **GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 7, 2024                                        RUDOLPH CONTRERAS
                                                                        United States District Judge